**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-12-0000035**
**15-MAR-2013**
**09:00 AM**

NO. CAAP-12-0000035

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

RONALD I. BENNETT,
Claimant-Appellee/Appellant,
v.
COUNTY OF MAUI, MAUI POLICE DEPARTMENT,
Employer-Appellant/Appellee, Self-Insured,
and
JOHN MULLEN AND COMPANY, INC.,
Insurance Adjuster-Appellant/Appellee

APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS APPEALS BOARD
(CASE NO. 2008-451(M)(7-08-00313))

SUMMARY DISPOSITION ORDER
(By: Foley, Presiding J., Fujise and Leonard, JJ.)

Claimant-Appellee/Appellant Ronald I. Bennett (Bennett)
appeals from the December 16, 2011 "Decision and Order" of the
Labor and Industrial Relations Appeal Board (LIRAB) resolving
certain compensation issues in his workers' compensation claim in
favor of Employer-Appellant/Appellee County of Maui, Maui Police
Department (Employer) and Insurance Adjuster-Appellant/Appellee
John Mullen & Co. The LIRAB concluded Bennett's neck condition

did not arise out of and in the course of employment and was therefore not compensable.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant statutory and case law, we conclude Bennett's appeal is without merit.

Hawaii Revised Statutes (HRS) § 386-85 (Supp. 2008) establishes a presumption that an employee's claim for workers' compensation is for a covered work injury. The employer has the initial burden of producing substantial evidence rebutting the presumption that the injury is work-related. Moi v. State, Dept. of Pub. Safety, 118 Hawai‘i 239, 242, 188 P.3d 753, 756 (App. 2008). If the initial burden of production is satisfied, the LIRAB must weigh the employer's evidence against the claimant's evidence, resolving reasonable doubts on the work-relatedness issue in the claimant's favor. Id.

Bennett contends the LIRAB erroneously concluded the Employer met its burden of producing substantial evidence. The Employer relied primarily on Leonard Cupo, M.D. (Dr. Cupo), who conducted an independent medical evaluation (IME) of Bennett and provided testimony concluding Bennett's neck condition was not work-related. Bennett argues Dr. Cupo's testimony was not sufficiently specific because Dr. Cupo failed to explain the cause of Bennett's disc herniation and cervical radiculopathy. See Korsak v. Hawai‘i Permanente Med. Group, 94 Hawai‘i 297, 308, 12 P.3d 1238, 1249 (2000) (stating "generalized medical opinions do not constitute substantial evidence").

We disagree. Dr. Cupo specifically opined that Bennett's condition was attributable to the natural progression

2

of a degenerative disc and joint disease and was not attributable to Bennett's fall and injury on January 28, 2008. Dr. Cupo cited medical records indicating Bennett had consulted Daniel Garcia, M.D. (Dr. Garcia), Bennett's treating physician at the Maui Medical Group, three and a half months before his fall, complaining of neck pain radiating into the right and left shoulders. Bennett admitted he did not comply with Dr. Garcia's physical therapy referral and follow-up request. Dr. Cupo testified that degenerative disc and joint disease is the most common cause of neck pain, and he concluded Bennett's cervical symptoms were a recurrence of the same symptoms for which he consulted Dr. Garcia in October 2007.

Dr. Cupo also specifically considered and acknowledged the possibility that a trauma such as Bennett's fall could cause or aggravate a neck condition. However, he stated that disc herniation presents symptoms almost immediately after the trauma occurs, within a day or two at most. D. Thomas Rogers, M.D. (Dr. Rogers), a neurologist consulted by Bennett, and Dr. Garcia also agreed that if Bennett's fall had caused his herniated disc, he should have experienced neck pain immediately after the fall.

The record is inconsistent as to when Bennett first began experiencing any neck pain or stiffness. Dr. Cupo observed that the medical records indicated Bennett did not feel neck pain until some time after his fall. The emergency room records from the day of the fall and notes by Robert Harvey, M.D. (Dr. Harvey), an orthopedic surgeon, from Bennett's first five visits (from January to March) made no mention of neck pain or injury. The emergency room records also stated Bennett had a full range of motion in his neck, which in Dr. Cupo's opinion established that Bennett had not suffered an acute neck injury from the fall.

Bennett was also inconsistent about when he began experiencing neck symptoms. He made no mention of any neck pain in his statement to the insurance adjuster, which was recorded three days after the fall. At his March 2008 visits to the Maui Medical Group, he stated he began experiencing neck pain one or two weeks after his fall. However, in his second statement to the insurance adjuster (recorded April 17, 2008) and at the hearing, he stated his neck began hurting the day after his fall.

Other than Bennett's testimony, the only other evidence indicating Bennett experienced neck pain immediately after his fall was from Dr. Harvey. Dr. Harvey provided a medical note stating Bennett had reported a stiff neck and problems on his right side "a few days after his injury." The LIRAB chose not to credit Dr. Harvey's testimony, however, finding it implausible that Dr. Harvey simply forgot to document any neck symptoms until Bennett's fifth visit on March 13, 2008. The LIRAB instead found Bennett did not inform Dr. Harvey of any neck injury until the March 13, 2008 visit. Given the inconsistencies in the record as to the onset of Bennett's symptoms and Dr. Cupo's testimony, the LIRAB did not err in concluding the Employer had produced substantial evidence that Bennett's neck condition was not caused by his fall or his employment and was attributable to a pre-existing degenerative disc disease.

Bennett also contends Dr. Cupo's testimony is not sufficient to outweigh the opinions of his treating physicians, who linked Bennett's neck condition to his fall. However, it is well established that the LIRAB's determinations of credibility and weight are entitled to deference. Igawa v. Koa House Restaurant, 97 Hawai'i 402, 410, 38 P.3d 570, 578 (2001). We conclude the Employer produced sufficient substantial evidence

4

specifically addressing and rebutting Bennett's supporting testimony.

Although Dr. Rogers concluded Bennett's injury was work-related, his conclusion was based on Bennett's characterization of his injury. Dr. Rogers stated he expected that a neck injury such as Bennett's would present symptoms "as soon as it occurred," and Bennett had informed Dr. Rogers that he began experiencing neck stiffness on the day of his fall and developed numbness in his right thumb within a few days. The LIRAB, however, apparently gave greater weight to the Employer's evidence indicating Bennett did not experience neck pain until some time after his fall.

Dr. Rogers also theorized that Bennett's foot injury could have overshadowed his neck pain, such that Bennett might not have noticed injury in other parts of his body. However, Dr. Rogers admitted he did not know the exact nature of the foot injury and only knew that Bennett required a cast. Dr. Cupo examined the records of Bennett's foot injury and disagreed with Dr. Rogers, observing that the foot sprain was a minor and separate injury.

The record contains substantial evidence rebutting Bennett's supporting evidence from his other treating physicians as well. Although Dr. Garcia treated Bennett's neck as a workers' compensation injury, he did so for procedural reasons. At his deposition, he specifically stated he could not give a medical opinion as to whether the neck injury was work-related. Bennett also relies on Dr. Harvey's testimony that disc herniation symptoms could appear over time. However, Drs. Rogers, Garcia, and Cupo stated Bennett should have felt neck pain immediately after his fall.

5

We do not pass upon the doctors' relative credibility, and we give due deference to the LIRAB's expertise and to its assessment of the weight given to the evidence and its evaluation of the credibility of witnesses. Igawa, 97 Hawai'i at 410, 38 P.3d at 578. We conclude the Employer presented substantial evidence sufficient to support the LIRAB's decision and to "expressly, direct, and specifically" rebut the presumption of work-relatedness. See Korsak, 94 Hawai'i 297, 12 P.3d 1238.

Therefore,

IT IS HEREBY ORDERED that the December 16, 2011 "Decision and Order" of the Labor and Industrial Relations Appeal Board is affirmed.

DATED: Honolulu, Hawai'i, March 15, 2013.

On the briefs:

Kevin H.S. Yuen
Brianne L.O. Wong Leong
(Law Office of Kevin H.S. Yuen)
for Claimant-Appellant.

Richard B. Rost
Deputy Corporation Counsel,
County of Maui
for Employer-Appellee, Self-
Insured.

Presiding Judge

Associate Judge

Associate Judge

6